ALLEN v MICHIGAN BELL TELEPHONE COMPANY

OPINION OF THE COURT

1. APPEAL AND ERROR—LAW OF CASE—LEGAL QUESTIONS.

The term "law of the case", as generally used, designates the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal questions determined by the appellate court will not be determined differently on a subsequent appeal in the same case, where the facts remain the same.

2. DAMAGES—CONTRACTS—BREACH OF CONTRACT—OBJECT OF DAMAGES.

The object of the damages in a breach of contract suit is to place the injured party in as good a position as he would have been in if the promised performance had been rendered.

3. DAMAGES—CONTRACTS—BREACH OF CONTRACT—LOST PROFITS—REASONABLE CERTAINTY—SPECULATIVE DAMAGES.

Lost profits, if properly proved, are a proper element of damages in a suit for breach of contract; however, before lost profits are recoverable there must be a reasonable degree of certainty for the calculations as opposed to their being conjectural or speculative.

4. DAMAGES—CONTRACTS—ADVERTISEMENT—TELEPHONE DIRECTORIES—BREACH OF CONTRACT—LOST PROFITS—SPECULATIVE DAMAGES.

A damage award in a breach of contract suit for lost profits arising out of a defendant's failure to list the plaintiff's advertisement in a telephone directory cannot be sustained where plaintiff's proofs on lost profits were sheer conjecture and speculation, there was no testimony regarding the only theory upon which damages could be ascertained, and records for plaintiff's business were either not kept or destroyed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 744 *et seq.*
[2] 22 Am Jur 2d, Damages § 46 *et seq.*
[3, 4] 22 Am Jur 2d, Damages § 171 *et seq.*
[5] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

PARTIAL CONCURRENCE BY QUINN, P. J.

5. APPEAL AND ERROR—COURTS—JURISDICTION—LAW OF CASE—SUBSE-
QUENT APPEAL.

> A decision of the Court of Appeals which was beyond the jurisdic-
> tion of the Court because it was based on theories that were not
> raised or argued at trial and were not briefed or argued on
> appeal is not binding on the Court in a subsequent appeal in
> the same case.

Appeal from Genesee, John W. Baker, J. Sub-
mitted Division 2 March 5, 1975, at Lansing.
(Docket No. 17966.) Decided May 27, 1975. Leave
to appeal applied for.

Complaint by Kenneth D. Allen against Michi-
gan Bell Telephone Company for damages arising
out of the failure to list plaintiff in the yellow
pages of defendant's telephone directory. Judg-
ment for plaintiff. Defendant appeals. Plaintiff
Elsie V. Allen, executrix of the estate of Kenneth
D. Allen, deceased, cross-appeals. Reversed.

*Transue, Goodstein & Goodstein,* for plaintiff.

*Vanker & Zosel, P. C., Donald E. Brown* and
*Mary M. Waterstone,* for defendant.

Before: QUINN, P. J., and BASHARA and N. J.
KAUFMAN, JJ.

BASHARA, J. This case has previously been be-
fore a panel of our Court and is reported in 18
Mich App 632; 171 NW2d 689 (1969). In that
opinion this Court reversed a summary judgment
granted to defendants and remanded the cause for
a trial on the merits. Application for rehearing
and leave to appeal to the Supreme Court were
filed by defendant. Both applications were denied.

After a bench trial, the court awarded plaintiff[1] $2,487.06 in damages plus $1,270 in interest.

The operative facts as reported in the earlier decision are that:

"Plaintiff, an insurance agent, contracted to place several advertisements in the Flint classified telephone directory. The defendant, Michigan Bell Telephone Company, accepted the order and agreed to publish the listings in its 1963 Yellow Pages—but failed to do so. Upon plaintiff's suit for damages, the defendant Bell Telephone asserted the following clause of their contract as an affirmative defense:

" 'Telephone company (a) will not be bound by any verbal agreements or (b) will not be liable to advertiser for damages resulting from failure to include all or any of said items of advertising in the directories or from errors in the advertising printed in the directories, in excess of the agreed prices for such advertising for the issue in which the error or omission occurs.' " 18 Mich App 632,634.

Defendant raises two issues on appeal, the first of which was considered in the previous appeal. They are 1) whether the clause limiting liability contained in defendant's classified directory contract is valid; and 2) whether plaintiff's proofs on the question of damages were shown with a requisite degree of certainty.

Defendant contends we should reexamine the holding of our prior opinion where it was held that defendant's disclaimer clause was unconscionable and thus unenforceable. Defendant avers that the great majority of .jurisdictions which have passed on the same or similar disclaimer have found it to be enforceable. Defendant further contends the

---

[1] Although Mr. Allen is now deceased, this appeal is being prosecuted by his wife as executrix. For purposes of this opinion we refer to Mr. Allen as plaintiff.

former opinion is not the "law of the case". We must first address ourselves to this last assertion. If the former opinion is "the law of the case" we are foreclosed from further considering the matter of liability.

The term "law of the case", as generally used, designates the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same. *Leland v Ford,* 252 Mich 547; 233 NW 410 (1930), *American Ins Co of Newark v Martinek,* 216 Mich 421; 185 NW 683 (1921), *Myers v Erwin,* 180 Mich 469; 147 NW 458 (1914), *Fitzgerald v Benton Harbor,* 132 Mich 645; 94 NW 186 (1903).

The doctrine has been characterized by our courts in the following manner:

> "So long as the facts remain the same, the rule of law applied by this Court in the decision of the cause remains the law of the case in all subsequent proceedings therein." *Mynning v The Detroit, L & N R Co,* 67 Mich 677, 679; 35 NW 811 (1888).

> "It is the well-settled rule that courts will not review former decisions made by the same court in the same cause, and on the same facts." *The People's Savings Bank v Eberts,* 96 Mich 396, 398; 55 NW 996 (1893).

There is, so far as we have been able to ascertain, no decision of our Court which has refused to follow the law of the case.[2]

---

[2] There are, however, cases from other jurisdictions which have declined to follow this doctrine. Mr. Justice Holmes in *Messinger v Anderson,* 225 US 436, 444; 32 S Ct 739; 56 L Ed 1152 (1912), stated: "In the absence of statute the phrase, 'law of the case', as applied to the effect of previous orders on the later action of the court rendering

While the author of this opinion might have decided the issue in the prior appeal differently, that decision must be treated as the law of the case. We believe defendant's assertions that its exculpatory clause is valid should be addressed to the Supreme Court. We note that the Supreme Court in denying leave to appeal of the former decision stated:[3] "Denial of leave is not to be taken as tacit or other agreement with all the reasoning of the majority opinion below".

Defendant next contends plaintiff's proofs on damages were totally speculative.

A chronology of events is necessary for the disposition of this issue. In November of 1962, the year preceding defendant's omission to place plaintiff's advertisement in the Flint Yellow Pages, plaintiff sold his insurance business to Associated Agency Inc. and became an employee of that company. After the sale, plaintiff removed his office to Associated and the telephone number he used for many years was also transferred.

When plaintiff sold his business in late 1962, two documents were executed. In the "Solicitors Agreement" it was provided that:

"In addition thereto, Kenneth D. Allen, shall receive a commission on *all new business* produced by Kenneth D. Allen not presently on the books of Associated Agency, Inc. in an amount equal to 100% of the first term commission on said new business. *Orders for*

---

them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *See also Johnson v Cadillac Motor Car Co,* 261 F 878 (CA 2, 1919). *In United States v Fullard-Leo,* 156 F2d 756, 757 (CA 9, 1946), the court stated: "While the power to re-examine questions previously determined should be sparingly exercised, there are occasions when justice requires that course". *See also Vangel v Vangel,* 45 Cal 2d 804; 291 P2d 25 (1955), *State ex rel Weede v Bechtel,* 239 Iowa 1298; 31 NW2d 853 (1948).

[3] *Allen v Michigan Bell Telephone Co,* 383 Mich 804 (1970).

*insurance which come to the Associated Agency, Inc. through the telephone number which was formerly used by Kenneth D. Allen Agency shall not be deemed new business except orders for insurance from persons who were assureds of Kenneth D. Allen on November 30, 1962, when said orders are for insurance covering new properties or risks.* Kenneth D. Allen shall not be entitled to any commission for new business which is developed by Kenneth D. Allen from persons coming into the office of Associated Agency, Inc. and being serviced by Kenneth D. Allen unless request is made by Kenneth D. Allen and approved by the General Manager of Associated Agency, Inc. upon first contact with that person. The above commission shall not be payable until the policy premium in full has been received by Associated Agency, Inc." (Emphasis supplied.)

It is clear from the agreement plaintiff was only to receive commissions on insurance sales covering new properties or risks bought by persons to whom he had previously sold policies. The damages plaintiff suffered due to defendant's breach of their contract are thus limited by the above "Solicitors Agreement".

In order for plaintiff to sustain his burden of proof on the issue of damages it was incumbent upon him to prove with a reasonable degree of certainty that in 1963 previous clients desiring to purchase new risk insurance were not able to contact plaintiff because plaintiff's telephone number was not listed in the yellow pages.

At trial plaintiff first introduced his tax returns for 10 years preceding 1963 and his tax returns for 1963–1968. He attempted to compare his average income for the years before he sold his business with his average income after his business was sold. No proofs were offered to show the amount of income that was produced by Associated Agency Inc. from new business emanating from plaintiff's

former clientele. Evidence of this nature should have been present in order to offer validity to plaintiff's theory of the case.

Plaintiff next introduced several witnesses from various insurance companies. They testified that their companies, some of whom plaintiff represented, did not segregate their records between new business and new risks, and renewals of old business.

Plaintiff's sole proofs as to the measure of damages consisted of his and his wife's testimony. They both agreed that 60% of his business resulted from renewals and 40% from new business. Plaintiff's wife, who worked with her husband on a part-time basis, also testified that 80% of their business came over the telephone, and that when a policy was sold, plaintiff stickered the buyers policy with a tag giving the name of his agency and phone number. Plaintiff was not able to produce his business records. He further testified that he did not make the distinction between renewals and new business for record keeping purposes.

Plaintiff's claim for damages is based upon what commission he would have received had his advertisement been properly placed. It is a claim for lost profits.

The object of the measure of damages in a breach of contract suit is to place the injured party in as good a position as he would have been in if the promised performance had been rendered. *Ambassador Steel Co v Ewald Steel Co,* 33 Mich App 495; 190 NW2d 275 (1971), *Dierickx v Vulcan Industries,* 10 Mich App 67; 158 NW2d 778 (1968). Lost profits, if properly proved, are a proper element of damages. *Brodsky v Allen Hayosh Industries, Inc,* 1 Mich App 591; 137 NW2d 771 (1965). However, before lost profits are recoverable there

must be a reasonable degree of certainty for the calculations as opposed to their being conjectural or speculative. *The Vogue v Shopping Centers Inc,* 58 Mich App 421; 228 NW2d 403 (1975), *Fister v Henschel,* 7 Mich App 590; 152 NW2d 555 (1967).

Plaintiff and his wife estimated that 40% of the yearly business was "new business". However, under the Solicitors Agreement, plaintiff was only to receive commissions on new risk policies sold to old customers. He was not to receive commission on all new business. Plaintiff did not introduce any evidence as to the amount of new business generated from old customers for which he would receive payment under the Solicitor's Agreement. Nor was any testimony produced from old clients who in 1963 wanted to purchase new-risk insurance policies but were not able to locate his phone number. Without having introduced this testimony, plaintiff's proofs on lost profits were sheer conjecture and speculation. Further, plaintiff's wife testified all policies sold were stickered with plaintiff's business telephone number. If there were old customers who wanted to purchase insurance from plaintiff, they had his telephone number.

The lack of any testimony from plaintiff regarding the only theory upon which damages could be ascertained, coupled with the fact that records were either not kept or destroyed, leads us to the inescapable conclusion that the verdict could only have been based upon mere speculation. This being so, the verdict as to damages cannot be sustained.

Reversed.

N. J. KAUFMAN, J., concurred.

Quinn, P. J. *(concurring in part).* I concur in the result and agree with the analysis and the holding on the damage issue.

Since I dissented in *Allen v Michigan Bell Telephone Co,* 18 Mich App 632; 171 NW2d 689 (1969), I do not feel bound by it. For this reason I dissent from the result reached by the majority opinion on the first issue.