**B. T. WOODBURN, Appellant,**

v.

**NORTHWESTERN BELL TELEPHONE COMPANY, Appellee.**

**No. 61459.**

Supreme Court of Iowa.

Feb. 21, 1979.

F. Richard Lyford of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant.

L. R. Voigts of Nyemaster, Goode, McLaughlin, Emery & O'Brien, and Wm. F. McFarlin and Richard A. Karre, Des Moines, for appellee.

HARRIS, Justice.

B. T. Woodburn (plaintiff), a physician, was omitted from a professional listing in the yellow pages of defendant's 1971 directory. When he brought this suit for what he claims were the resulting damages, the Northwestern Bell Telephone Company (defendant) interposed two special defenses by way of express limitations of damages. One was based on a provision in defendant's tariff, on file with the Iowa commerce commission. The second defense was based on a provision printed on the reverse side of a form for placing the listing. Ruling on defendant's application for adjudication of law points, the trial court held in favor of both defenses. Thereafter the parties stipulated to the amounts of damages, computed on the basis of the adjudication of the two defenses.

Final judgment was entered for the limited damages. Plaintiff brought this appeal separately challenging the adjudication that the two provisions both effectively limited the amount plaintiff could recover. We affirm the trial court's determination that the tariff constituted a valid limitation of recoverable damages. We affirm in part and reverse in part the trial court's determination as to the contractual limitation.

As a part of business phone service, defendant provides, without extra charge, a white-page listing and a yellow-page listing in its telephone book. For an additional fee the patron can contract for special listings in the yellow pages.

Plaintiff's professional practice is in Des Moines where he specializes in plastic surgery and surgery of the hand. In connection with the relocation of his offices in August of 1971, plaintiff telephoned defendant and requested a change in his directory listing. Plaintiff wished to have his new professional address and phone number listed both in small type and bold type in the yellow pages. Defendant agreed to make the change. On October 7, 1971, plaintiff again telephoned to confirm the change of listing. Thereafter a copy of the listing contract was sent to him. Defendant failed to make the listing as agreed to.

Other facts are unclear due to the summary nature of the trial proceeding. There is no contention that plaintiff knew of an Iowa commerce commission tariff limitation which provides as follows:

"The telephone company's liability arising from errors in or omissions of directory listings shall be limited to and satisfied by an amount not exceeding one-half of the amount of the fixed charges for the service effected for the period from the date of issuance of the directory in which the mistake occurred to the date of issuance of a new directory containing the proper listing."

Plaintiff contends he was also unaware of the limitation of liability on the reverse of the form contract, as follows:

"If the telephone company shall omit said advertisement or any additional advertising from any issue of its directory, in whole or in part, or shall make errors therein, its liability therefor shall in no event exceed the amount of the charges for the advertising which was omitted or in which the error occurred in such directory issue."

Plaintiff contends he neither saw nor signed defendant's contract form prior to making the agreement. The agreement offered in evidence appears to have been signed November 3, 1971, by someone claiming to represent plaintiff.

I. The Iowa commerce commission has ruled that the tariff, first above quoted, was reasonable and enforceable as to the listings provided without additional cost to the patron. *Carey v. Northwestern Bell Co.*, docket # U–380, 6 November, 1972. In the same decision the commission also ruled that bold-face listings and display advertising in the yellow pages are outside the public service function of the telephone company and hence constitute private business ventures over which the commission claims no jurisdiction.

The commission reasoned that the routine listings, alphabetized under various descriptive headings, are a part of the service provided each subscriber for the convenience of all subscribers. The commission, on the other hand, felt that listings in bold-face type and display listings, found on yellow pages, are actively solicited by company salesmen and purchased by subscribers as advertising.

Plaintiff believes the tariff should not limit his recovery because it is contrary to public policy in that telephones are a monopoly violative of federal antitrust law. He cites *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1977). But we believe *Cantor* is inapplicable on the basis of the United States Supreme Court's explanation of it in *Bates v. State Bar of Arizona*, 433 U.S. 350, 361, 97 S.Ct. 2691, 2697–2698, 53 L.Ed.2d 810, 822 (1977).

Jurisdiction over public utilities is given the commerce commission by § 476.-15, The Code. Contrary to plaintiff's contention, we believe the State has a legitimate interest in the regulation of those listings provided free to purchasers as a part of the regulated business. We think it follows that the commission's approval of defendant's tariff, embodying the limitation of liability, has the force of law. See *Allen v. General Tel. Co. of Northwest, Inc.*, 20 Wash.App. 144, 578 P.2d 1333 (1978).

The trial court was right in its adjudication limiting liability in accordance with the tariff.

II. There remains plaintiff's claim for damages because of defendant's failure to provide the separate, bold-face listing in the yellow pages. Defendant interposes, not the tariff, but the contractual provision to limit this claim.

Plaintiff insists the contractual limitation of liability is also contrary to public policy. The trial court disagreed and so do we. Courts generally enforce clauses which limit to a stated amount the liability of telephone companies on account of errors or omissions in directory listings. See Annot., 92 A.L.R.2d 917, 935–945. We find nothing contrary to public policy in such a provision.

We therefore agree with the trial court that defendant could properly limit its liability as to nonutility business. But the trial court did not stop with this ruling. It went on to hold that the only question remaining in the suit was damages as limited by the tariff and contract.

The trial court seems to have found, as a matter of law, that the parties were bound by the contract terms. This was in spite of plaintiff's contention that the clause was contrary to the reasonable expectations of the parties. Plaintiff asserted: ". . . At no time when the listing requests were made did Woodburn see the exculpatory language on the reverse side of the standard form nor was he advised of it orally. . . ."

The effect of the trial court's decree was to foreclose any consideration of plaintiff's assertion that the contract lacked mutuality of assent. But we have said: "Usually as an essential prerequisite to the formation of an informal contract there must be an agreement; a mutual manifestation of assent *to the same terms.* The agreement is ordinarily reached by a process of offer and acceptance. [Authorities.]" (Emphasis added.) *Serv. Emp. Intern., etc. v. Cedar Rapids, etc.,* 222 N.W.2d 403, 408 (Iowa 1974). See also 17 C.J.S. Contracts § 30, pp. 633–634; 17 Am.Jur.2d, Contracts, § 18, p. 22.

Plaintiff should not have been deprived of the opportunity to present his version of the facts as to assent. A motion to adjudicate law points under rule 105, Rules of Civil Procedure, is appropriate only when the material facts are undisputed. *State v. Iowa Dist. Court In And For Linn Cty.,* 271 N.W.2d 704, 706 (Iowa 1978); *Andersen Const. v. Nat. Bank of Des Moines,* 262 N.W.2d 563, 564–565 (Iowa 1978).

Upon remand plaintiff should be accorded an opportunity to make whatever showing he can in support of his claim that there was no mutuality of assent. If mutuality of assent is established, so that the contractual provision is applicable, it would, as hereinbefore explained, limit defendant's liability. But if there was no mutuality of assent the contractual provision would not limit plaintiff's recovery.

The case is accordingly affirmed in part, reversed in part, and remanded for further proceedings in conformance herewith.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All Justices concur except UHLENHOPP and McCORMICK, JJ., who take no part.