McCLURE ENGINEERING ASSOCIATES, INC., Plaintiff-Appellant, *v.*
THE REUBEN DONNELLEY CORP., Defendant-Appellee.

Third District   No. 80-546

Opinion filed November 19, 1981.—Rehearing denied December 18, 1981.

HEIPLE, J., dissenting.

Francis Van Hooreweghe, of Van Hooreweghe, Fackel & Thuline, of Moline,
for appellant.

Joel A. Haber, Alvin D. Meyers, Steven J. Teplinsky, and Glen T. Keysor, all of Chatz, Sugarman, Abrams, Haber & Fagel, of Chicago, and William H. Dailey, of Moline, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Rock Island County entered upon a motion for directed verdict at the close of plaintiff's case. Plaintiff was awarded the sum of $271.20 and has appealed, claiming that the limitation on defendant's liability contained in the parties' contract is void as against public policy.

Plaintiff, McClure Engineering Associates, Inc. (McClure), is a professional engineering firm. Defendant, Reuben H. Donnelley Corporation (Donnelley), is a publisher of yellow pages for the telephone company. In 1975 and 1976, plaintiff contracted with defendant's agent for the purchase of advertising space in the yellow pages of the succeeding years' telephone directories for Geneseo, Illinois. In addition, in 1976 plaintiff contracted to purchase space in the 1977 telephone directory for Freeport, Illinois. The requested advertisements were omitted from the three directories. Donnelley tendered $271.20, the amount paid by McLure Engineering for the advertisements, pursuant to the following provisions which were contained in the contracts:

> "The advertiser is expected to pay the rate as billed. The liability of the Telephone Company in connection with any error or omission in publication of, or failure to publish, any item of advertising in any issue of any directory, shall be limited to the charges for the publication in such issue of the item of advertising involved, excluding charges for cuts, engravings or electrotypes. The term 'Telephone Company' shall include any or all Telephone Companies involved in this transaction, the Selling Company, the Publishing Companies, or any representative of said company or companies."

This suit followed. McClure Engineering complained that it suffered losses in excess of $60,000 as a result of Donnelley's negligence in omitting the advertisements. The trial court, upon conclusion of McClure's case, granted Donnelley's motion for a directed verdict and entered judgment in the amount of $271.20. On appeal, plaintiff raises a single issue. That is, is the exculpatory clause contained in the parties' contracts, which insulates defendant from liability for negligence, invalid as being contrary to public policy in Illinois?

Plaintiff urges this court to adopt the view espoused by courts in two sister jurisdictions wherein exculpatory clauses have been held to be void as a matter of public policy. Plaintiff cites *Woodburn v. Northwestern Bell Telephone Co.* (Iowa 1979), 275 N.W.2d 403, and *Allen v. Michigan*

*Bell Telephone Co.* (1969), 18 Mich. App. 632, 171 N.W.2d 689, in support of its argument. Initially, we note, as defendant is quick to point out, that the Iowa court, in *Woodburn*, specifically ruled against plaintiff on the question presently before the court in this case. The *Woodburn* court remanded the cause to the trial court solely for resolution of the question of mutuality of assent in the formation of the contract—an issue which has not been raised in the instant case. Furthermore, the precedential value of the Michigan case, *Allen*, is diminished by the fact that the Michigan appellate court, upon second review, limited its holding concerning the enforceability of the exculpatory clause therein by stating that its earlier ruling on that issue was the law of the case. (*Allen v. Michigan Bell Telephone Co.* (1975), 61 Mich. App. 62, 65, 232 N.W.2d 302, 304.) Because the holdings of these cases are of, at best, questionable precedential value, we decline to embrace the opinions for the proposition advanced by plaintiff herein.

■■ While the precise issue before this court has not received prior attention in the reviewing courts of Illinois, we believe that the general rules of law which guide the outcome of this case are fairly well established. Generally, Illinois adheres to the rule, in keeping with the principle of freedom of contract, that contractual limitations are valid and enforceable. (*First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 417, 388 N.E.2d 17, 20 (citing *Schumann-Heink v. Folsom* (1927), 328 Ill. 321, 159 N.E. 250); *Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, 342 N.E.2d 105; see also cases in Annot., 92 A.L.R.2d 917, 935-45 (1963), and A.L.R.2d Later Case Service 40-42 (1976).) In the absence of legislative directive to the contrary, an exculpatory clause generally will be held valid. The exception to this rule, thereby permitting the court to invalidate an exculpatory clause, obtains "only if a special social relationship of a semi-public nature is found to permeate the transaction between the parties." (*First Financial Insurance Co.* (1979), 69 Ill. App. 3d 413, 418, 388 N.E.2d 17, 21.) Relationships such as employer-employee (*Campbell v. Chicago, Rock Island & Pacific Ry. Co.* (1910), 243 Ill. 620, 90 N.E. 1106) and public carrier-passenger (*Checkley v. Illinois Central R.R. Co.* (1913), 257 Ill. 491, 100 N.E. 942) are examples of these special social relationships.

Plaintiff attempts to place his relationship with defendant Donnelley into the category of special social relationships covered by the exception to the general rule based on several factors which, plaintiff contends, render defendant's business activities a "public service." Plaintiff's argument necessarily proceeds from the premise that providers of public services may not escape liability for their own negligence through exculpatory provisions in their contracts. (57 Am. Jur. 2d *Negligence* §27 (1971).) As will be shown, we do not believe that the facts of the present

case lend themselves to the conclusion that plaintiff urges us to reach.

Firstly, plaintiff contends that defendant's business is largely a government-regulated monopoly. While the telephone business itself is subject to governmental regulation, defendant, as a private corporation engaged by the telephone company to publish its yellow pages, is not a government-regulated monopoly.

■■ Secondly, plaintiff argues that McClure, as a professional association and subject to advertising limitations imposed by its code of professional ethics, requires defendant's services as a "practical necessity." We are unconvinced of the practical necessity of plaintiff's yellow pages advertisements in the instant case, particularly when plaintiff was not even a resident of either of the communities in which the advertisements were omitted. It is apparent that plaintiff elected to advertise its services in neighboring communities so as to expand the reach of its offices located in East Moline and Rockford, Illinois. (Plaintiff does not complain that it was omitted from the directories of either of these cities. Therefore, we assume that the yellow pages properly included plaintiff's advertisements for the cities where its offices operated.) The opportunity to procure advertising outside of the community serviced by any particular directory for which a business number has been assigned is a luxury offered by the telephone company for those who desire such advertising. Sound business judgment—not "practical necessity"—dictates whether or not any particular customer should take advantage of the additional advertising opportunity.

Plaintiff's third argument is that defendant is a public service because of the "extent to which defendant holds itself out to the public." As we have stated earlier, we do not believe that the quasi-public character of the telephone company itself is properly attributable to the defendant publishing company.

■■ Finally, plaintiff argues that the relative bargaining power of the parties is so imbalanced as to render the standardized contracts adhesive and unenforceable. Disparity in bargaining positions is one factor to consider in determining whether an exculpatory provision is unconscionable. (*First Financial Insurance Co.*, 69 Ill. App. 3d 413, 419, 388 N.E.2d 17, 21-22 (citing *Cerny Pickas & Co. v. C. R. Jahn Co.* (1952), 347 Ill. App. 379, 106 N.E.2d 828).) Standing alone, however, disparity in bargaining power will not render the provision unenforceable. In the present case, plaintiff does not allege that he attempted to negotiate the contracts in question. In fact, plaintiff denied having even read the terms of his contracts with defendant's agent. On these facts, it is difficult to conclude that the alleged disparity in bargaining positions has been demonstrated to have been unconscionable.

■■ Not having found that a special relationship of a semi-public nature

existed between the parties, we hold that the agreement between plaintiff engineering firm and defendant publisher of yellow pages, whereby the publisher's liability for negligence is limited to the amount paid for its services, is not void as against the public policy of this State. Plaintiff's recovery was properly limited to $271.20 upon defendant's motion in the trial court.

Judgment affirmed.

ALLOY, J., concurs.

Mr. JUSTICE HEIPLE, dissenting:

Reuben H. Donnelley Corp., as publisher of the telephone directory, solicited listings from McClure Engineering Corp., a professional engineering firm. McClure bought the space and paid the contract price of $271.20. The contract offered by Donnelley contained an exculpatory clause which referred to Donnelley as the "Telephone Company" and limited its liability to a refund of the publication charges in the event of any error, omission, or failure to publish. Donnelley then failed to publish the listing contracted for, and McClure sued for consequential damages for lost business, claiming that the exculpatory clause was a violation of public policy. At trial, at the close of the plaintiff's case, the trial court granted defendant's motion for directed verdict, and entered a judgment in favor of plaintiff for $271.20 representing the price paid for the advertising without regard to consequential damages. Plaintiff appeals, and this court has chosen to affirm. I disagree.

In this situation, the telephone company and the publisher of the telephone book are, for all practical purposes, one. The service offered is a protected monopoly service. There is no competing telephone company, and there is no competing telephone directory. Today's business climate depends on the telephone. Consumers of services are urged through repetitive advertising to use the yellow pages and "Let your fingers do the walking." This court could and should take judicial notice of the business necessity for professional corporations such as McClure Engineering to have a telephone and to carry advertising in the yellow pages. Given this recognition, there is no equality of bargaining position. It is like the story of the chicken and the pig who were asked to donate ham and eggs for a dinner. While the cost of the donation was a minor matter to the chicken, it was a matter of life and death to the pig. So it is with Donnelley and McClure. Donnelley can well afford to lose $271.20 that it is not entitled to for not running McClure's listing. But McClure Engineering cannot afford to lose the lost business occasioned by the dropped listing in the yellow pages.

Numerous treatises and articles have discussed contractual clauses which limit liability. Some are upheld. Some are not. In determining the validity of such clauses, it is important to consider whether one of the parties is charged with a public service. It is also important to consider whether there is equality or disparity of bargaining power. Furthermore, the extent of the limitation and its reasonableness should also be considered. In the case at hand, defendant is performing a public monopoly service. There is a complete disparity of bargaining power. The exculpatory clause totally and absolutely bars any liability on the part of the defendant. To merely be obligated to refund the precollected contract price is to be liable for nothing. Under the clause in question, defendant cannot be held to pay even 10 cents for error, omission, or failure to publish. All they have to do is refund the amount paid. Thus, they merely obligate themselves to return what was not theirs anyway.

Clauses designed to protect contracting parties from the consequences of their negligence should be carefully scrutinized. I believe that the instant clause should be held void as against public policy. Accordingly, I dissent.